916 F.2d 481
 Bankr. L. Rep. P 73,708
In re Kenneth Palmer OLSON, Debtor.
PALATINE NATIONAL BANK OF PALATINE, ILLINOIS, Appellee/Cross-Appellant,
v.
Kenneth Palmer OLSON, Appellant/Cross-Appellee.
 Nos. 89-5288MN, 89-5312MN.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 16, 1990.
Decided Oct. 17, 1990.
 
 Joseph A. Nilan, Minneapolis, Minn., for appellant/cross-appellee.
 Seth M. Colton, St. Paul, Minn., for appellee/cross-appellant.
 Before ARNOLD, Circuit Judge, HEANEY and FRIEDMAN,* Senior Circuit Judges.
 ARNOLD, Circuit Judge.
 
 
 1
 This is a bankruptcy case. Kenneth Olson was denied a discharge from his debts because he failed to disclose his ongoing interest in a dinner theater nominally owned by his wife. The statutory basis for the Bankruptcy Court's[1] decision was 11 U.S.C. Sec. 727(a)(4)(A).[2] Olson appeals. He argues that the evidence does not support the Court's findings. He argues further that even if he did have some kind of interest in the theater, failing to tell the Bankruptcy Court about it did not violate the law. That is so, Olson says, because his (disputed) interest was worthless. The Palatine National Bank of Palatine, Illinois, is the creditor which prevented Olson's discharge. The bank contends that the Bankruptcy Court's decision was both right and wrong. The Court was right, the bank urges, in refusing to discharge Olson based on his material omissions regarding his financial status. The Court was wrong, the bank continues, because it should have also refused to discharge him on other grounds.[3] We affirm.I.
 
 
 2
 This is a case where the tangle of facts makes the legal issues appear more difficult than they are. Olson was a real-estate developer. He was initially very successful. His fortunes, however, eventually turned, and in 1984 he sought the protection of a bankruptcy court. Palatine National Bank was involved as a source of financing in many of Olson's ventures. The Bank is now one of his main creditors. Karen Strom is Olson's wife. She also played a role in many of his business dealings, and in 1987 she, too, filed for bankruptcy. Olson's petition was one for liquidation filed under Chapter Seven of the bankruptcy code, whereas Strom's petition was filed under Chapter Eleven, allowing her to reorganize her assets. Some of the assets listed in her petition ("scheduled" in the language of bankruptcy) involved the Carlton Bloomington Dinner Theater, Inc. Strom ostensibly owned all the outstanding shares of stock in that corporation, as well as the real estate where the theater was located.
 
 
 3
 The extent of Kenneth Olson's interest in the Carlton dinner theater when he filed bankruptcy is what this case is about. Olson, along with Carl Berndt, organized the CBDT corporation. Each man owned one-half of the corporation's stock. Their business objective was to purchase and renovate a decrepit bowling alley, making it a successful dinner theater featuring top entertainers. In 1978 Olson sold his stock to Strom. The purchase price was $500, the amount he paid for it. In 1979, Berndt sold his stock back to CBDT and ended his association with the project. Later that same year, the corporation sold Strom the bowling-alley property that it had since acquired. Strom then leased the property back to the corporation.
 
 
 4
 Meanwhile, preparations to open the theater were ongoing. A marketing plan was developed and implemented. While he was a stockholder, Berndt served as president of the corporation and general manager of the theater. Strom was involved in marketing the theater, and she oversaw some aspects of how the theater was decorated. When Berndt's stock was retired, Strom became president of CBDT and general manager of the theater. Despite the efforts of all concerned, the theater lost money from the day it opened. CBDT filed a Chapter Eleven bankruptcy petition in 1986, intending to reorganize its finances. The theater nonetheless closed in 1987, and its bankruptcy petition was converted to a Chapter Seven liquidation proceeding at the same time. Strom's Chapter Eleven petition (listing her interest in the CBDT and the dinner-theater property) followed.
 
 
 5
 While the Carlton theater and Strom were having their own financial problems, action on Olson's petition was proceeding apace. Olson omitted any reference to the dinner theater in the schedule of assets he prepared for the Bankruptcy Court. In his testimony he took the same position: the dinner theater was his wife's project, not his. Therefore, Olson contended, neither CBDT nor the theater real estate should be a part of his bankruptcy proceeding. The Bankruptcy Court disagreed. It found his claim that he lacked any interest in the dinner theater to be supported by the form but not the substance of the theater venture. It found that the following facts belied Olson's claims: his involvement in almost every aspect of the dinner theater's operation, the funneling of Olson's money into the theater enterprise through various entities that made up his "Byzantine" financial empire, and Strom's lack of experience with this kind of business venture. Relying on 11 U.S.C. Sec. 727(a)(4)(A), the Court held that Olson's claims of disinterest amounted to false representations of his finances under oath. Olson's request to have all his debts discharged was accordingly denied. The District Court adopted and affirmed these factual findings and legal conclusions.
 
 II.
 
 6
 The Bankruptcy Code commands in Sec. 727(a)(4)(A) that a debtor shall not be discharged if he "knowingly and fraudulently ... made a false oath or account ..." in connection with his petition. Olson claims that the evidence of his intent to mislead the Court and his creditors is too thin to support denying him a discharge. We are unpersuaded. All during the bankruptcy proceeding Olson maintained that his financial interests in the dinner theater ended almost a decade ago when he sold his CBDT stock to Strom. The Bankruptcy Court was faced, however, with a record replete with contrary indications.
 
 
 7
 Every cent that Kenneth had, ultimately went into the Carlton [dinner theater] after the purported transfer.... Kenneth, not Karen, arranged all financing. Actual and prospective lenders dealt with Kenneth as the responsible person and looked to him for payment in connection with the project. Karen had no significant monetary investment in the project, was without any significant experience in the development and operation of such projects, and had no independent credit worthiness of the kind required for the participation of lenders. Aside from miscellaneous decorating decisions, every indication from the record and documents in this proceeding is that Kenneth controlled the project in concept, development, and operation.
 
 
 8
 98 B.R. at 953 n. 14. The Bankruptcy Court concluded that Olson's claims of distance and disinterest were "preposterous." We can see no clear error in the Bankruptcy Court's findings of fact regarding Olson's interest in and involvement with the dinner theater. They are accordingly affirmed. Moreover, as the Court held, that interest and involvement demonstrate the falsity of Olson's repeated contrary representations before the Bankruptcy Court.
 
 
 9
 Olson also contends, however, that the finding that he was financially interested in the Carlton theater does not end this case. He is correct. To bar a discharge, the debtor's misrepresentation must be material. 4 Collier on Bankruptcy (Bankruptcy Code) Sec. 727.04 at 727-57 (15th ed. 1989). Olson argues that materiality is a function of value. Since, according to him, whatever (disputed) interest he had in the theater was worthless, his omission of that interest is not material. Olson's argument construes materiality too narrowly. While we are not prepared to say that value is irrelevant to materiality, we are certain that it is not determinative. Our sister circuits' analysis of this question supports our conclusion. "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." In re Chalik, 748 F.2d 616, 618 (11th Cir.1984) (per curiam); Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249, 252 (4th Cir.1987) (adopting and applying this standard); see also 4 Collier, supra, at 727-58 n. 6a (citing cases). Olson's omission is material because it is related, and in a substantial way, to his business transactions and the extent of his estate. We have no difficulty reaching this conclusion, even though the Bankruptcy Court noted the dinner theater's "questionable" value, and the parties still disagree about its worth. The Carlton was intimately connected to Olson's financial situation, and that satisfies the requirement of materiality.
 
 
 10
 Olson's last claim on appeal--that we should remand for a new trial in the interests of justice because of his lawyer's poor performance--lacks any merit. We will not discuss this point other than to note that we reject it. Palatine labors valiantly to convince this Court that Olson should also be denied his discharge on three other grounds. We decline the invitation in light of our disposition of the main appeal.
 
 
 11
 Affirmed.
 
 
 
 *
 The Hon. Daniel M. Friedman, Senior United States Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 The Honorable Dennis D. O'Brien. 98 B.R. 944. On appeal to the federal District Court for the District of Minnesota, the Honorable Robert G. Renner, United States District Judge, affirmed the Bankruptcy Court's decision in all respects
 
 
 [2]
 Section 727(a)(4)(A) provides that "[t]he court shall grant the debtor a discharge, unless ... the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account."
 
 
 [3]
 Our decision to affirm on the ground used by the courts below makes it unnecessary to address the alternate grounds, which the Bank urges on cross-appeal. It was not necessary, in order to preserve these alternate grounds, for the Bank to file a cross-appeal. An appellee may argue any ground in support of the judgment below, even a ground on which it lost in the lower court